Ahren A. Tiller Esq. [SBN: 250608]
Email: ahren.tiller@blc-sd.com
Brett F. Bodie Esq. [SBN: 264452]
Email: brett.bodie@blc-sd.com
BLC Law Center, APC
1230 Columbia St., Ste 1100
San Diego, CA 92101
Phone: (619) 894-8831
Facsimile: (866) 444-7026

Attorneys for Plaintiff
CAROLINA SANTIAGO-GONZALEZ

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

CAROLINA SANTIAGO-GONZALEZ

Plaintiff,

vs.

HAPPEN BANK, NATIONAL ASSOCIATION f/k/a LENDINGCLUB BANK, NATIONAL ASSOCIATION

Defendant.

Case No.: '26CV5642 W DEB

**COMPLAINT FOR DAMAGES FOR (1) VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CAL. CIV. CODE §§ 1788-1788.33); AND (2) VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. §227)**

**JURY TRIAL DEMANDED**

**<u>COMPLAINT FOR DAMAGES</u>**

**INTRODUCTION**

1. CAROLINA SANTIAGO-GONZALEZ (hereinafter referred to as “Plaintiff”), by and through her Counsel of record, brings this action against Happen Bank, National Association f/k/a LendingClub Bank, National Association (hereinafter referred to as “LendingClub” or “Defendant”), pertaining to actions by Defendant

to unlawfully collect a debt allegedly owed by Plaintiff, including but not limited to, collection via the use of an Artificial or Prerecorded Voice in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA"), and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA" [Cal. Civ. C. §§ 1788-1788.33]), thereby invading Plaintiff's privacy, and causing Plaintiff damages.

2. The California legislature determined that unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system. The legislature further determined there is a need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty, and due regard for the rights of others. The legislature's explicit purpose of enacting the Rosenthal Fair Debt Collection Practices Act of California (hereinafter "RFDCPA") was to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts.[1] Cal. Civ. Code § 1788.17 incorporates the FDCPA into the RFDCPA, by stating that every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of the Federal Fair Debt Collection Practices Act, sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.

3. The Telephone Consumer Protection Act (hereinafter referred to as "the TCPA") was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs.*, LLC, 132 S. Ct. 740, 744 (2012).

4. In enacting the TCPA, Congress specifically found that "the evidence presented to

[1] CA Civil Code §§ 1788.1(a)-(b)

the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call . . .” Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, ¶ 13, 105 Stat. 2394 (congressional findings, codified as note following 47 U.S.C. § 227). See also, *Mims,* 132 S. Ct., at 744.

5. As the Ninth Circuit stated in *Henderson v. United Student Aid Funds, Inc.*:

> Under the TCPA, it is unlawful "to make any call (other than . . . with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Telemarketers, debt collectors, and others obtain phone numbers consumers did not consent to be called on through skip tracing. Because consumers did not provide … "prior express consent" to be called on those numbers…. Therefore, if the numbers were also auto dialed, the calls violated the TCPA. 47 U.S.C. § 227(b)(1)(A)(iii).
>
> *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1071-72 (9th Cir. 2019).

6. Further, as the United States District Court for the Central District of California explained in *Mata v. Veros Credit, LLC*, No. SA CV 16-98-DOC (JCGx), 2017 U.S. Dist. LEXIS 114373, at *9 (C.D. Cal. Jan. 20, 2017),

> It is sufficient for a plaintiff to allege the defendant used an "artificial or prerecorded voice" to place a call, "without any need to consider whether those plaintiffs also adequately alleged use of an ATDS." *Flores*, 2015 U.S. Dist. LEXIS 92176, 2015 WL 4340020, at *12; see also *Robinson v. Midland Funding, LLC*, No. 10CV2261, 2011 U.S. Dist. LEXIS 40107, 2011 WL 1434919 (S.D. Cal. Apr. 13, 2011) and *Reyes v. Saxon Mortgage Servs., Inc.*, No. 09CV1366, 2009 U.S. Dist. LEXIS 125235, 2009 WL 3738177, at *4 (S.D. Cal. Nov. 5, 2009).

7. Allegations of the use of an artificial or prerecorded voice to place a call are sufficient alone to properly plead a claim under the TCPA.

> The Vaccaro court held, and I agree, that "[b]ecause the provision is written in the disjunctive, plaintiffs can state a claim under the TCPA by alleging the use of (1) an 'artificial or prerecorded voice' or (2) an ATDS." 2013 U.S. Dist. LEXIS 99991, [WL] at *n. 2.; see also *Holcombe v. Credit Protection Ass’n, LP*, No. 14-cv-14, 2014 U.S. Dist. LEXIS 122054, 2014 WL 4252277, at *3 (M.D. Ga. Aug. 28, 2014); *Lardner v. Diversified Consultants Inc.,* No. 13-cv-22751, 17 F. Supp. 3d 1215, 2014 U.S. Dist. LEXIS 64205, 2014 WL 1778960, at *6 (S.D.

Fla. May 1, 2014); *Vance v. Bureau of Collection Recovery LLC*, No. 10-cv-06342, 2011 U.S. Dist. LEXIS 24908, 2011 WL 881550, at *3 (N.D. Ill. March 11, 2011).

*Warnick v. Dish Network LLC,* Civil Action No. 12-cv-01952-WYD-MEH, 2014 U.S. Dist. LEXIS 138381, at *36-37 (D. Colo. Sep. 30, 2014).

8. See also the United States Supreme Court's ruling in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1172 n.8 (2021) ("By contrast, Congress did impose broader prohibitions elsewhere in the TCPA. See, *e.g.,* 47 U.S.C. §§227(b)(1)(A) and (B) [prohibiting 'artificial or prerecorded voice' calls, irrespective of the type of technology used]").

9. Plaintiff makes the allegations contained herein on information and belief, except as to those allegations regarding herself, which are made and based upon personal knowledge.

## JURISDICTION AND VENUE

10. This action is based on Defendant's violations of the RFDCPA found in California Civil Code §§ 1788 - 1788.33; and the TCPA found in Title 47 of the United States Code Section 227, *et seq.*

11. This Court has jurisdiction over Defendant, pursuant to 28 U.S.C. § 1331, as the unlawful practices alleged herein involve a federal question under the TCPA.

12. The unlawful practices alleged herein occurred in California, in the County of San Diego and violated California's Civil Code §§ 1788 - 1788.33.

13. This Court further has supplemental jurisdiction over Plaintiff's California Causes of action, pursuant to 28 U.S.C. § 1367(a), as Plaintiff's California state law claims are so related to Plaintiff's Federal TCPA claims in this action, that they form part of the same case or controversy.

14. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1)-(2), because all or some of the unlawful practices and violations of law alleged herein occurred and are occurring in the County of San Diego, California. Furthermore,

Defendant regularly conducts business within the State of California, County of San Diego, and Plaintiff resides in San Diego County, California.

**PARTIES**

15. Plaintiff is, and was at all times mentioned herein, a natural person residing in the County of San Diego, in the State of California.

16. Plaintiff is a natural person from whom a debt collector sought to collect a covered debt (here, a consumer debt) that was due and owing or alleged to be due and owing from Plaintiff, and therefore Plaintiff is a "debtor" as that term is defined by Cal. Civ. Code § 1788.2(h).

17. Defendant LendingClub is a National Banking Association. Plaintiff alleges that LendingClub is, and at all times mentioned herein was, chartered as a national banking association under the laws of the United States, organized in the State of Utah with its principal office located at 2701 N. Thanksgiving Way, Suite 300, Lehi, Utah 84043, maintaining a mailing address of 595 Market Street, Suite 200, San Francisco, California 94105, and doing business throughout the country, including this District.

18. At all times relevant to this Complaint, including on and after April 27, 2026, Defendant's legal name was "LendingClub Bank, National Association," and Defendant conducted the collection activity described herein under the name "LendingClub" and, beginning in or about late June 2026, under the brand name "Happen Bank." On August 17, 2026, (after all of the conduct alleged herein), Defendant filed a Certificate of Amendment with the California Secretary of State (File No. BA20261632795) changing its corporate name to "Happen Bank, National Association." Defendant is one and the same entity (California Entity No. 4853267) and is referred to herein as "LendingClub."

19. Defendant LendingClub regularly attempts to collect using mails, electronic communication, and telephone, "consumer debts" allegedly owed to it, as that

term is defined by Cal. Civ. Code §1788.2(f).

20. Defendant is, and at all times mentioned herein was, a corporation and a "person," as defined by 47 U.S.C. § 153(39).

21. When individuals owe LendingClub debts for regular monthly payments on consumer loans, and other similar obligations, LendingClub collects on those consumer debts owed to it using the mail, electronic communications, and via the telephone. For example, when its customers are delinquent on their debts owed to LendingClub, as part of its routine business LendingClub calls those customers, sends them collection messages, letters by mail, and emails all seeking payment on the delinquent debt. Therefore, LendingClub is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c) and engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b).

22. Cal. Civ. Code § 1788.17 states that every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of the Federal Fair Debt Collection Practices Act, sections 1692b to 1692j, inclusive of, and shall be subject to the remedies in Section 1692k of Title 15 of the United States Code.

23. At all times relevant hereto, Defendant used, controlled, and/or operated a telephone system that was designed to place multiple calls to Plaintiff's cellular telephone using an artificial voice and/or prerecorded voice message ("Recorded Voice") as described in 47 U.S.C. § 227(b)(1)(A).

24. This case involves money, property, or their equivalent, due or owing, or alleged to be due or owing from a natural person by reason of a "consumer credit transaction." Thus, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code §1788.2(f).

## GENERAL ALLEGATIONS

25. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

26. On or about June 6, 2024, Defendant issued Plaintiff an unsecured consumer installment loan (the "LendingClub Loan"). The LendingClub Loan was taken out for, and used for, personal, family, and household purposes.

27. Plaintiff made payments toward her LendingClub Loan when she took it out and continued making regular monthly payments and maintained good standing on her LendingClub Loan until approximately April of 2026, when unfortunately, Plaintiff experienced financial hardship and was unable to maintain the regular monthly payments.

28. Upon going into default on her LendingClub Loan, agents for LendingClub called Plaintiff multiple times and requested payment using a Recorded Voice, often multiple times per day, sometimes every day.

29. The collection calls were made to Plaintiff's cellular telephone.

30. Plaintiff sought out and retained an attorney to represent her with regards to the LendingClub Loan allegedly owed to LendingClub.

31. On April 27, 2026, Plaintiff's Counsel drafted and submitted for mailing a Cease-and-Desist letter, whereby Plaintiff's Attorney stated in writing that Plaintiff was revoking consent to call her via the use of a Recorded Voice, that Plaintiff had retained Counsel, and that LendingClub needed to cease calling Plaintiff pursuant to the RFDCPA ("Letter"). The Letter identified Plaintiff by name, including as "Carolina Santiago-Gonzalez," and referenced the last four digits of Plaintiff's social security number next to her name to help LendingClub identify the Plaintiff's account.

32. The Letter informed LendingClub that Plaintiff was represented by Counsel and thus constituted written notice pursuant to Cal. Civ. Code § 1788.14(c) that Plaintiff was represented by an attorney with respect to any and all debts allegedly owed to or serviced by Defendant, and request was thereby made that all communications regarding this alleged consumer debt must be directed exclusively to Plaintiff's attorney, and the Letter clearly revoked any prior

consent to contact Plaintiff via the use of an automated dialing system, text, or other method, including but not limited to calls with a prerecorded or automated voice messages.

33. The April 27, 2026, Letter was sent via Docsmit. Docsmit is a third-party company with no relation to Plaintiff or her Counsel. Docsmit's sole business is the sending of mail on behalf of customers. Docsmit provides a certificate of mailing and identifies the exact time a letter was sent.

34. Docsmit sent the April 27, 2026, Letter to the following address:

> LendingClub Corporation
> 595 Market Street, Suite 200
> San Francisco, CA 94105

35. Docsmit included with the letter the following attestation of mailing:

> "*The information herein is certified by Docsmit.com, Inc. ("Docsmit") to be true and accurate as of the date and time this report was generated. All of the records relating to this communication were made at times proximate to those indicated. Docsmit has not permitted any of the parties hereto to modify the records*."

36. The address the April 27, 2026, Letter was sent to is the corporate mailing address LendingClub identified on its own public website as of March 12, 2026, approximately six weeks before the Letter was written:

LendingClub

595 Market Street, Suite 200
San Francisco, California 94105

37. The same address, 595 Market Street, Suite 200, San Francisco, California 94105, is, and at all times relevant hereto was, Defendant's mailing address of record on file with the California Secretary of State, as reflected in the Statement

of Information Defendant filed with the California Secretary of State on January 19, 2026 (File No. BA20260128709), and it remains Defendant's mailing address of record with the California Secretary of State as of the filing of this Complaint.

38. Likewise, the Statement and Designation by Foreign Corporation that Defendant filed with the California Secretary of State on February 21, 2022, identified 595 Market St. #200, San Francisco, California 94105 as both the street address of Defendant's principal office in California and its mailing address.

39. Although Defendant has since relocated its corporate headquarters to 88 Kearny Street in San Francisco, on information and belief, Defendant did not move its corporate headquarters until May 24, 2026, weeks after the Letter was delivered to 595 Market Street, Suite 200 on May 4, 2026. At all times relevant to the mailing and delivery of the Letter, 595 Market Street, Suite 200, San Francisco, California 94105 was Defendant's corporate mailing address.

40. LendingClub received the April 27, 2026, Letter, which USPS indicated was delivered on May 4, 2026.

41. However, despite receipt of the April 27, 2026, Letter referenced above which states that Plaintiff had revoked consent to be called via a Recorded Voice and had retained counsel regarding the subject debt, representatives of LendingClub have continued to call Plaintiff more than one hundred fifty (150) times since April 27, 2026, on her cellular telephone via the use of Prerecorded Voice messages.

42. Plaintiff alleges that LendingClub called Plaintiff in excess of one hundred fifty (150) times total, as many as nine (9) times in a single day, and often more than seven (7) times per week, based on her recollection of the frequency of calls, as well as the records of calls that she has in her possession.

43. By way of example only, the call records in Plaintiff's possession reflect at least fifty-one (51) calls from LendingClub between June 12, 2026 and July 14, 2026

alone, including eight (8) calls on June 12 and 13, 2026, nine (9) calls on July 10, 2026, and twenty-four (24) calls in the seven-day period from July 8, 2026 through July 14, 2026.

44. LendingClub, or its agents or representatives, have contacted Plaintiff on her cellular telephone over one hundred fifty (150) times since April 27, 2026, including using an artificial and/or recorded voice.

45. LendingClub called Plaintiff from a telephone number identified on Caller ID as (844) 691-0028, among others.

46. On a number of occasions, Plaintiff answered the phone and spoke to agents who stated they were calling regarding her outstanding LendingClub Loan and informed Plaintiff she was delinquent on the LendingClub Loan and immediate payment was requested.

47. Additionally, sometimes Plaintiff answered calls from Defendant and there was a delay before the line made a sound, indicative of the use of an artificial or prerecorded voice by LendingClub.

48. Furthermore, on a number of occasions, Plaintiff received calls from LendingClub and when she answered there was no one present on the line at first, indicative of the use of an automated and/or prerecorded telephone system.

49. Sometimes when Plaintiff did not answer a call from LendingClub, Plaintiff then received multiple calls in rapid succession from LendingClub, indicative of the use of a computerized phone system.

50. Plaintiff recalls answering some of the calls from LendingClub and after a brief period of no response, an automated voice came on the line and began delivering what seemed to be a scripted message. On those occasions, Plaintiff subsequently terminated the call.

51. According to Plaintiff's recollection, the multiple calls contained an automated robotic type voice and were identical to the previously scripted calls, which is indicative of a prerecorded voice message using what appeared to be a

computerized automated voice used in an attempt to collect upon the subject debt.

52. In addition, LendingClub left numerous voicemail messages on Plaintiff's cellular telephone wherein LendingClub left a pre-recorded voice message.

53. On multiple occasions, LendingClub left pre-recorded voice messages on Plaintiff's voicemail. The messages are in a computerized voice and are identical, word-for-word, and each state: "This is Julie from Lending Club. Please call me at 888-596-4478 during our business hours, which are Monday through Thursday 5 a.m. to 8 p.m., Friday 5 a.m. to 5 p.m., and Saturday 8 a.m. to 5 p.m. Pacific time. We look forward to speaking to you soon. Thank you."

54. Plaintiff also received similarly identical pre-recorded voice messages after LendingClub renamed itself Happen Bank, wherein the voicemails are word-for-word identical, and each states: "This is Julie from Happen Bank, formerly Lending Club. Please call me at 888-596-4478 during our business hours, which are Monday through Thursday, 5 a.m. to 6 p.m., Friday, 5 a.m. to 5 p.m., and Saturday, 6 a.m. to 2:30 p.m. Pacific time. We look forward to speaking to you soon. Thank you."

55. Each of the preserved voicemails begins with approximately three (3) seconds of silence before the voice begins speaking, and the messages within each set are delivered in the same voice, with the same wording, cadence, and pauses, and are the same length (approximately twenty-four (24) seconds for the first set and approximately twenty-seven (27) seconds for the second set). None of the voicemails addressed Plaintiff by name or contained any content specific to Plaintiff or her account, as they were generic automated voice recordings. These characteristics are indicative of a prerecorded voice message delivered by an automated system rather than a message left by a live agent.

56. Thus, many of the Defendant's calls to Plaintiff after receiving the letter contained an "artificial or prerecorded voice" as prohibited by 47 U.S.C. §

227(b)(1)(A).

57. The multiple calls made by Defendant or its agents after April 27, 2026, were therefore made in violation of 47 U.S.C. § 227(b)(1).

58. Despite receipt of Plaintiff's Attorney's Letter sent to Defendant's mailing address, instructing Defendant to cease calling Plaintiff's cellular telephone via the use of a Recorded Voice, which provided irrefutable notice that Plaintiff had revoked consent to call her cellular telephone by any means and that she had retained Counsel regarding this alleged debt, Defendant LendingClub continued to contact Plaintiff repeatedly.

## CAUSES OF ACTION

## I.

## FIRST CAUSE OF ACTION

## Violations of California Rosenthal Fair Debt Collection Practices Act

## (California Civil Code § 1788.14(c))

59. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

60. When Plaintiff's Counsel sent the April 27, 2026, cease-and-desist Letter to LendingClub, Defendant LendingClub was aware, or reasonably should have been aware, that Plaintiff was represented by an attorney.

61. Cal. Civ. Code §1788.14(c) provides in relevant part,

> No debt collector shall collect or attempt to collect a covered debt by means of the following practices:
>
> (c) Initiating communications, other than statements of account, with the debtor with regard to the covered debt, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by the attorney with respect to the covered debt and the notice includes the attorney's name and address and a request by the attorney that all communications regarding the covered debt be addressed to the attorney, unless the attorney fails to answer correspondence, return telephone calls, or discuss the obligation in question. This subdivision shall not apply if prior approval has been obtained from the debtor's attorney, or if the communication is a response in the ordinary course of business

to a debtor's inquiry.

62. By calling Plaintiff on her cellular phone over one hundred fifty (150) times after receipt of the April 27, 2026, Letter from Plaintiff's Counsel, LendingClub violated Cal. Civ. Code §1788.14(c).

63. As a result of the constant collection calls by LendingClub, Plaintiff has experienced stress and irritability, as the constant and harassing collection calls by LendingClub were overwhelming. Therefore, Plaintiff has suffered actual damages as a result of Defendant's violations of Cal. Civ. Code §1788.14(c).

64. Further, as stated previously, Cal. Civ. C. § 1788.17 incorporates the FDCPA into the Rosenthal Fair Debt Collection Practices Act, therefore if an individual violated 15 U.S.C. § 1692d, they in turn violate the RFDCPA.

65. 15 U.S.C. § 1692d(5) provides in pertinent part,

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

66. The Consumer Financial Protection Bureau's Regulation F, which implements the FDCPA, establishes that a debt collector is presumed to violate 15 U.S.C. § 1692d(5) if the debt collector places telephone calls to a particular person in connection with the collection of a particular debt more than seven times within seven consecutive days. 12 C.F.R. § 1006.14(b)(2)(i)(A), (b)(2)(ii).

67. Therefore, Defendant's acts of calling Plaintiff over one hundred fifty (150) times, multiple times per day, often in excess of seven (7) times per week, was a separate violation of 15 U.S.C. § 1692d(5), which is incorporated into the RFDCPA via Cal. Civ. C. § 1788.17.

**II.**

**SECOND CAUSE OF ACTION**

**Negligent and/or Willful Violations of the TCPA**

**(47 U.S.C. § 227, *et seq.*)**

68. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

69. Through the April 27, 2026, Letter sent by Plaintiff's Counsel, Plaintiff revoked any alleged consent for LendingClub or its agents or representatives to call Plaintiff on her cellular telephone via the use of an artificial and/or prerecorded voice.

70. The foregoing acts and omissions of LendingClub constitute numerous and multiple negligent and/or willful violations of the TCPA, including but not limited to every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

71. To properly plead a TCPA claim under 47 U.S.C. § 227(b), Plaintiff must allege the following elements: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012). Because 47 U.S.C. § 227(b)(1)(A) is written in the disjunctive, the use of an artificial or prerecorded voice satisfies the second element in place of an ATDS. See *Facebook, Inc. v. Duguid,* 141 S. Ct. 1163, 1172 n.8 (2021). To plead these elements as required will obviously include overlap with the very statute that a Plaintiff alleges was violated. See *Vaccaro v. CVS Pharmacy, Inc.,* No. 13-CV-174 - IEG (RBB), 2013 U.S. Dist. LEXIS 99991, at *6 (S.D. Cal. July 16, 2013) ("It does not follow that factual allegations that borrow or echo statutory language are necessarily legal conclusions. Factual allegations do not cease to be factual even if they quote a statute's language.")

72. Therefore, Plaintiff's allegations above regarding Defendant's conduct have satisfied all of the aforementioned requisite elements for a TCPA claim, thus

Defendant violated 47 U.S.C. § 227(b)(1).

73. As a result of LendingClub's negligent violations of 47 U.S.C. §227, *et seq.*, Plaintiff is entitled to an award of $500 in statutory damages, for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

74. As a result of LendingClub's knowing and/or willful violations of 47 U.S.C. §227, *et seq.*, the Plaintiff is entitled to an award of $1,500 in statutory damages for every one of LendingClub's knowing and/or willful violations of the TCPA, pursuant to 47 U.S.C. § 227(b)(3).

75. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff having set forth the claims for relief against Defendant Happen Bank, National Association f/k/a LendingClub Bank, National Association herein, respectfully requests this Court enter a Judgment against Defendant as follows:

a. As to the First Cause of Action, an award of actual damages pursuant to Cal. Civ. Code §1788.30(a) according to proof;

b. As to the First Cause of Action, an award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code §1788.30(b);

c. As to the First Cause of Action, an award of reasonable attorney's fees and costs pursuant to Cal. Civ. Code §1788.30(c);

d. As to the Second Cause of Action, $500 in statutory damages for each and every one of Defendant's negligent violations of 47 U.S.C. §227(b)(1), pursuant to 47 U.S.C. § 227(b)(3)(B); and $1,500.00 in statutory damages for each and every one of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1), pursuant to 47 U.S.C. § 227(b)(3);

e. As to the Second Cause of Action, injunctive relief prohibiting such conduct in the

future pursuant to 47 U.S.C. § 227(b)(3)(A);

f. For such other and further relief as the Court may deem just and proper.

Dated: October 1, 2026, By: BLC Law Center, APC

*s/ Ahren A. Tiller*
Email: ahren.tiller@blc-sd.com

Ahren A. Tiller, Esq.
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands a trial by jury on all issues triable by a jury.

Dated: October 1, 2026, By: BLC Law Center, APC

*s/ Ahren A. Tiller*
Email: ahren.tiller@blc-sd.com

Ahren A. Tiller, Esq.
Attorney for Plaintiff